UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK POTENZA,

        Plaintiff,               **DECISION**

v.                                **and ORDER**

WEST IRONDEQUOIT                 06-CV-6407
CENTRAL SCHOOL DISTRICT,

        Defendant.
_____

<u>INTRODUCTION</u>

Plaintiff Patrick Potenza, ("Potenza"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), and the New York State Human Rights Law against defendant West Irondequoit Central School District ("the School District") claiming that he was retaliated against for complaining of gender discrimination. Specifically, plaintiff claims that after he complained to his supervisors of discriminatory treatment, he was subjected to retaliatory treatment including a suspension and termination of his employment.[1]

Defendant denies plaintiff's allegations, and moves for summary judgment dismissing plaintiff's Complaint on grounds that plaintiff has failed to state a prima facie case of retaliation. According to the defendant, Potenza can not establish that as a result of engaging in protected activity, he suffered any

---

[1] Plaintiff was later reinstated to his employment with the School District, and remains employed with the District.

retaliatory conduct.  For the reasons set forth below, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety.

BACKGROUND

Plaintiff Patrick Potenza was hired as a cleaner for the defendant West Irondequoit Central School District in 1991.  In 1992, he was promoted to the position of Custodial Assistant, and in 1994, was promoted to the position of Custodian.

In 1999, plaintiff was assigned to two schools in the School District: Iroquois Middle School and Colebrook Elementary School. According to the defendant, plaintiff performed his duties poorly at theses schools, and was the subject of many complaints from teachers.  Plaintiff contends that he performed his job well at Iroquois, and never received any complaints regarding his work. In response to the alleged complaints, on February 4, 2000, Barbara Carlson ("Carlson"), the Director of Environmental Services for the School District, and plaintiff's supervisor, transferred plaintiff to Irondequoit High  School.  In this position, plaintiff reported directly to the school Principal, had more mechanical duties, but less  cleaning  duties  and  less  supervisory  responsibilities. Although plaintiff was unhappy about the transfer, he did not file a protest or grievance with his union regarding the transfer. Potenza also reported to Carlson and Carlson's supervisor William Domm ("Domm").

While assigned to Irondequoit High School, plaintiff was the subject of numerous disciplinary memoranda or counselings. On September 11, 2003, Domm issued a memo to the plaintiff indicating that plaintiff was using above-average sick and personal days, and that his use of such time would be more closely monitored. Two months later, Domm issued plaintiff a "final notice" regarding his absenteeism. The final notice was issued contemporaneously with counseling that plaintiff received from Carlson regarding insubordination and other misconduct.

On February 5, 2004, three months after his final notice and counseling regarding insubordination, plaintiff was again counseled, this time for failing to respond on January 27, 2004 to calls made over the radio, telephone and public address system requesting his assistance for shoveling snow. Upon being located, plaintiff claimed that he was sick, and left work.

On March 3, 2004, the Principal of Irondequoit High School, Patrick McCue ("McCue") issued a performance evaluation of Potenza, criticizing his performance. Specifically, McCue indicated concern with the school's overall appearance, Potenza's ability to work with others to complete all necessary cleaning and maintenance, and plaintiff's responsiveness and attendance.

On May 25, 2004, Potenza was again counseled by Carlson regarding his attendance and time-keeping. Carlson discussed plaintiff's leaving work early, failure to adhere to his work

schedule, and failure to keep an accurate accounting of his work hours. This counseling session was followed with another counseling session on June 3, 2004 regarding plaintiff's failure to accurately cite the reason for a leave request. Carlson met yet again with the plaintiff on June 17, 2004, when it was learned that Potenza falsely claimed to have worked a full day on June 11, 2004, when in fact he arrived one-half hour late to work.

Despite Principal McCue's concerns about Potenza's lack of responsiveness to requests made of him that were set forth in Potenza's March, 2004 performance evaluation, McCue thereafter on September 9, 2004 wrote a detailed memorandum to the plaintiff explaining McCue's continued dissatisfaction with Potenza's performance in those areas. Carlson again counseled plaintiff regarding his poor job performance.

In January, 2005, school security guard Mike Pratt reported that plaintiff routinely drove on school grounds in the early morning with his car lights off. Pratt complained that because he couldn't see plaintiff's vehicle, he almost became involved in an accident with Potenza. Potenza ignored an email from Carlson asking him to drive on school property with his headlights on.

Two months later, plaintiff was counseled against whistling "circus music" anytime Carlson or another supervisor were near him. Also in March, 2005 McCue again notified the plaintiff that he was failing to meet McCue's expectations with respect to his job

performance. In April 2005, after receiving complaints from several employees, Carlson again met with the plaintiff regarding unauthorized absences and improper time keeping.

On September 8, 2005 a Custodial Coordinator informed Carlson of several deficiencies in plaintiff's performance over the summer months, including insubordination towards supervisors, and failure to properly supervise summer cleaning crews. The same coordinator wrote a follow-up e-mail in November, 2005, informing Carlson that staff members continued to complain about Potenza's performance. In December, 2005, the Coordinator again informed Carlson that McCue continued to have problems with plaintiff's responsiveness to requests for service and cleanliness of the school.

In November, 2005, Carlson learned that plaintiff had been self-assigning overtime, and using overtime to complete work that was scheduled to be completed during his regular shift. In December, 2005, plaintiff refused to assist in the delivery of a grand piano to the school, and another custodian was required to help receive the piano and place it in the auditorium for a concert that evening.

In January, 2006, plaintiff retained legal counsel, and in a letter from counsel to the Superintendent of the School District dated January 26, 2006, complained that he was being sexually discriminated against by Carlson. Although plaintiff did not offer an explanation of why he believed he was being discriminated

against, Potenza claims in this action that Carlson often made him feel uncomfortable by commenting on his physical appearance. He claims that on one occasion, Carlson demonstrated the use of a digital camera by zooming the camera in on plaintiff's crotch area. Potenza further claims that Carlson once commented on new black coats worn by custodial employees by saying that she "liked her men in black."

On February 2, 2006, Potenza filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") claiming that he had been the victim of gender discrimination and sexual harassment. The EEOC investigated the charge, but in a Notice of Dismissal of the charges dated May 23, 2006, found no probable cause for action against the defendant.

On February 8, 2006, eight days after he filed his charge with the EEOC, Potenza received his annual performance evaluation from Principal McCue. The evaluation indicated that Potenza needed improvement in several areas, including communication with school district personnel, initiative, and follow-through. After receiving this evaluation, plaintiff did not receive any job counselings or disciplinary actions for approximately one year, and in 2007, his annual performance evaluation from McCue reflected that much of plaintiff's performance had become satisfactory.

In March 2007, Potenza received a job counseling session from Carlson and the custodial coordinator regarding excessive

absenteeism, leaving work early, and plaintiff's inability to complete his work in the allotted time. Three months later, in June, 2007, plaintiff was again counseled regarding a pattern of absenteeism, and refusal to work cooperatively with other school district employees.

Another topic that was discussed at plaintiff's counseling was a June 5, 2007 incident that generated a complaint from a citizen who resided close to school grounds. The resident called the school at 6:54 a.m. that morning to complain that a school employee was operating a loud leaf blower near her home, and yelling that "If I have to be up, everyone has to be up." Potenza admitted to this conduct.

A further performance issue discussed at Potenza's June, 2007 counseling was an incident in which plaintiff accidently cut his finger while reaching into a tool box, and then proceeded to squeeze blood from his finger onto the floor. Once a small pool of blood had formed on the floor, Potenza then taped-off the area with black and yellow caution tape and wrote on the tape: "Bloody mess, Bloody mess, Bloody mess, Accident scene Accident scene". The accident occurred at approximately 9:30 a.m. on June 5, 2007, Plaintiff did not clean up the blood spill, however, until being asked to do so by the custodial coordinator at approximately 1:00 p.m. that day.

Plaintiff then took the next two days off as a result of the cut to his finger.

Because of plaintiff's conduct, Domm became involved in attempting to correct plaintiff's performance deficiencies. Domm met with the plaintiff to discuss a pattern of absences that generally occurred at the end of the work week, and an incident in which Potenza directed his staff to clear out a class room that was scheduled for use by a community education class. On that occasion, plaintiff's actions rendered the classroom unuseable, which resulted in complaints from the director of the community education program, and from the teacher of the community education class. In light of plaintiff's attendance and performance problems, including the incidents involving the leaf blower and the blood left on the school floor, plaintiff was advised by Domm that if he continued to perform poorly, his job could be in jeopardy.

Despite the warning, in August, 2007, plaintiff failed to water the high school lawn in the mornings as directed by the School District Superintendent. As a result, Domm suspended plaintiff for five days, and issued him a "final warning" stating that any further performance deficiencies would result in the termination of plaintiff's employment. Plaintiff's union, which had not filed any grievances on behalf of the plaintiff related to any of the job counselings received by Potenza, grieved the suspension to an independent arbitrator, who upheld the suspension.

In October, 2007, an employee reported to Domm that plaintiff had allegedly been telling other co-workers that another co-worker was gay, and was HIV positive.  Domm investigated the matter, and plaintiff admitted to making the comments.  As a result, Domm terminated Potenza's employment.  An arbitrator subsequently found that the School District was not justified in terminating Potenza's employment, and by Decision dated July 22, 2008, reinstated plaintiff to his position.

DISCUSSION

I.    Defendant's Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  Scott v. Harris, _____ U.S. ____, _____; 127 S.Ct. 1769, 1776 (2007) .  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Scott, _____ U.S. at ____; 127

S.Ct. at 1776 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986).

## II.   <u>Plaintiff has failed to establish a Prima Facie Case of Retaliation</u>

Although plaintiff's Amended Complaint suggests causes of action sounding in gender discrimination, (<u>See</u> Complaint at ¶¶ 1, 7-11, he now acknowledges that his only cause of action in this suit is for retaliation under federal and state law.  Because I find that plaintiff has failed to state a valid claim for retaliation, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

Plaintiff claims that he was retaliated against by the defendant for complaining of gender discrimination, and engaging in protected activities to oppose the alleged discrimination, including filing complaints of discrimination, and testifying in support of his discrimination claims.  He claims that after he complained of unfair treatment and filed his complaints against the defendant, his supervisor began complaining more about his work performance, was more critical of his performance, and that he was scrutinized more harshly than his co-employees.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the

protected activity and adverse action. <u>Burlington Northern & Santa</u>
<u>Fe Railway Co. V. White</u>, 548 U.S. 53, 68 (2006); <u>Holt v. KMI-</u>
<u>Continental</u>, 95 F.3d 123, 130 (2d Cir. 1996), <u>cert</u>. <u>denied</u>, 1997 WL
71191 (May 19, 1997); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1308
(2nd Cir. 1995) (citations omitted). Should the plaintiff state a
claim for retaliation, the defendant must then articulate a non-
discriminatory, legitimate reason for taking the action complained
of. If the defendant sustains its burden, the plaintiff is then
required to show that the employer's articulated reason is both
untrue and a pretext for the true retaliatory motive. <u>Id</u>

> A.    Plaintiff has alleged that he engaged in protected
>       <u>activities under Title VII</u>.

Title VII prohibits retaliation by an employer against an
employee in cases where the employee has engaged in protected
activity under the statute. "Protected activity" includes opposing
employment practices that are prohibited under Title VII (such as
discrimination based on race, color, religion, sex, or national
origin), or making a charge of discrimination, or participating in
any investigation, proceeding, or hearing arising under Title VII.
42 U.S.C. 2000e-3(a). <u>See</u> <u>also</u>, <u>Cruz v. Coach Stores, Inc.</u>, 202
F.3d 560, 566 (2nd Cir., 2000)("The term 'protected activity'
refers to action taken to protest or oppose statutorily prohibited
discrimination.")  Specifically, Title VII provides that:

> It shall be an unlawful employment practice
> for an employer to discriminate against any of
> his employees . . . because [the employee] has

opposed any practice made an unlawful
employment practice by this subchapter, or
because he has made a charge, testified,
assisted, or participated in any manner in an
investigation, proceeding, or hearing under
this subchapter.

42 U.S.C. 2000e-3(a).

In the instant case, plaintiff has established that he engaged in protected activity under Title VII. The record indicates that on January 26, 2006, through counsel, Potenza wrote a letter to the School District stating that an attorney had been retained regarding his claims that he had been subjected to unlawful and retaliatory harassment by Carlson. On February 2, 2006 he filed an administrative complaint with the EEOC alleging discrimination, and on August 11, 2006, he filed the original Complaint in this action. On April 16, 2007, he testified at his deposition in this matter. All of these acts constitute protected activity, and therefore plaintiff has demonstrated that he has engaged in protected activity for purposes of stating a claim of retaliation.

Plaintiff claims, however that he engaged in other forms of protected activity prior to January 26, 2006. Specifically, he claims that he complained about sexual harassment and discrimination on several occasions before filing his EEOC claim. However, while the record demonstrates that plaintiff did complain about his working conditions and treatment, there is no evidence in the record to suggest that he complained that he was being singled

out or treated differently because he is male, or because of any other protected characteristic. For example, although plaintiff contends that he complained that he was being singled out by Carlson when he was transferred from middle school to high school, there is no suggestion that he felt the transfer was discriminatory, or that he was being treated differently because he is a male. See Plaintiff's Local Rule 56.1 Counter-statement at ¶¶ 110-114. Similarly, his complaints about being written-up by Carlson or scrutinized more closely by her fail to suggest that she was doing so on the basis of his gender. Id. At ¶ ¶ 115-129. Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII. See Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C.Cir., 2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no allegation that the treatment was motivated by a discriminatory animus). See also, Ochei v. Coler/Goldwater Memorial Hosp., 450 F.Supp.2d 275, 287 (plaintiff's general complaints about her working conditions did not constitute engaging in a protected activity where plaintiff did not allege that she was a victim of discrimination); McMillan v. Powell, 526 F.Supp.2d 51, 55 (D.D.C., 2007)(employee's complaint's regarding supervisor's negative attitude towards her not protected activity where complaints failed

to allege that discrimination was the basis for supervisor's attitude); International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y., 2007)(to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring); Holt v. Roadway Package Systems, Inc., 506 F.Supp.2d 194, 206 (W.D.N.Y., 2007)(Larimer, J.)(employee's claim that supervisor was "out to get him" did not constitute protected activity as complaint did not allege discriminatory animus for supervisor's actions). Accordingly, I find that plaintiff did not engage in protected activity until January 26, 2006. Therefore, as a matter of law and fact, no allegedly retaliatory act could have taken place prior to January 26, 2006. Ford v. New York City Dept. of Health and Mental Hygiene, 545 F.Supp.2d 377, 394-95 (S.D.N.Y., 2008)(retaliatory act cannot occur prior to the act upon which retaliation is based).

B.  Plaintiff has failed to establish that he was subjected to an adverse employment action or actions which would dissuade a similarly-situated reasonable employee from making a charge of discrimination in response to his engaging in protected activity.

To state a prima facie case of retaliatory discrimination, in addition to establishing that he or she engaged in protected activity, a plaintiff must also establish that he or she suffered an adverse employment action, or was subjected to action that would dissuade a reasonable worker from making or supporting a charge of

discrimination, and a causal connection between the retaliatory conduct and the protected activity. <u>Burlington Northern & Santa Fe Railway Co. V. White</u>, 548 U.S. 53, 68 (2006). In the instant case, plaintiff has failed to establish that as a result of his engaging in protected activity, adverse employment action was taken against him or that any action that would dissuade a reasonable employee from making or supporting a charge of discrimination was taken against him.

Following the filing of his administrative complaint in February 2006, plaintiff received a performance evaluation from the principal of his school, Patrick McCue, in which he received less than satisfactory ratings in two of eight categories, including the areas of "relationships" and "communication." There is no evidence in the record, nor is it alleged that Barbara Carlson, the subject of plaintiff's discrimination complaint, played any role in preparing plaintiff's evaluation. Although plaintiff believed that he should have received better ratings, the reasons given by McCue for the ratings were well documented, and reflected the numerous job counselings that plaintiff received throughout the previous year. Accordingly, even when viewed in the light most favorable to the plaintiff, as the court is required to do, McCue's performance evaluation amount's to nothing more than criticism of the plaintiff's performance that was justified based on his numerous counselings for various performance deficiencies. The fact that

Potenza may have engaged in protected activity prior to the receipt of his evaluation does not immunize him from good-faith criticism of his work.  See e.g. Orluske v. Mercy Medical Center-North Iowa, 455 F.Supp.2d 900, (N.D.Iowa, 2006)(engaging in protected activity does not insulate employee from discipline).  I therefore find that plaintiff has failed to establish a causal connection between his filing of the EEOC complaint, and the receipt of a poor performance evaluation.

Moreover, I find that the issuance of February 2006 performance evaluation does not constitute an adverse employment action.  Plaintiff was not deprived of any benefit of his employment as the result of the evaluation, and did not suffer from any diminution of pay, status, or benefits.  Nor would a reasonable employee in plaintiff's circumstances be dissuaded from filing or making a complaint of discrimination based on the performance evaluation received by the plaintiff.  Plaintiff was ranked "satisfactory" or higher in 6 of 8 categories, received the highest rating possible in 3 of the 8 categories, and did not receive the lowest rating possible in any of the 8 categories.  Because plaintiff's performance deficiencies were well documented throughout the year, and because plaintiff received several high ratings, I find that a reasonable employee in plaintiff's circumstances would not have been dissuaded from exercising his protected rights by the evaluation that plaintiff received.

Nor does the evaluation received by Potenza in 2007 establish that he was subjected to an adverse employment act in response to his engaging in protected activity. Plaintiff received this evaluation in February 2007, more than five months <u>after</u> plaintiff filed the Complaint in this action. Accordingly, the evaluation was not issued in any temporal proximity to any protected activity engaged in by the plaintiff, and indeed, was issued in accordance with that annual evaluation schedule. Again, there is no indication or suggestion in the record that Barbara Carlson was involved in any way with the preparation of the evaluation, which was prepared by McCue, the Irondequoit High School Principal. More importantly, however, plaintiff's 2007 evaluation was better than his previous evaluation, reflecting McCue's belief that Potenza's performance had improved over the course of the year. This evaluation was better than the previous evaluation, and did not result in any diminution in pay, status, or benefits, and would not have dissuaded a reasonable employee in plaintiff's position from engaging in protected activity, I therefore find that plaintiff's 2007 performance evaluation does not constitute an adverse employment action.

On March 23, 2007, seven months <u>after</u> filing his discrimination complaint, plaintiff received a job counseling regarding his attendance, which, based on plaintiff's time records, demonstrated a pattern of taking days off at the end of the week,

and working through breaks so that he could leave work early.  This counseling did not constitute an adverse employment action causally connected to any protected activity.  The most recent protected activity engaged in by the plaintiff prior to the counseling was his filing of the original complaint in this action in August, 2006.  Accordingly, there is no temporal connection between the counseling and the filing of the Complaint.  Moreover, the counseling was supported by plaintiff's time records, which verified the complained of patterns.  Finally, the counseling resulted in no loss of pay, status, or benefits.

In June, 2007, plaintiff was again counseled regarding his attendance, and the incidents regarding the use of a leaf blower and the cutting of his finger, which Potenza magnified by pooling blood from the cut on to the floor, and taping-off the area of the blood spill.  This counseling occurred 2 months after Potenza gave deposition testimony in the instant matter.  And while the timing of the counseling could arguably give rise to an inference of a temporal connection between the two events, in this case it does not, as the reason for the counseling was well documented.  It is uncontroverted that plaintiff inexplicably yelled while operating the leaf blower that if he had to be awake, everyone had to be awake.  It is also uncontroverted that his actions gave rise to a complaint from a citizen to the school. Similarly, with respect to the finger-cutting incident, it is undisputed that plaintiff used

the opportunity to pool blood on to the school floor, tape the area off, and then leave the blood spill on the floor for several hours. Without question, this behavior warranted a job counseling, if not more serious action. However, even the job counseling that plaintiff received did not constitute an adverse employment action, as plaintiff did not suffer any diminution of pay, status, or benefits. Moreover, no reasonable employee could not expect to be counseled for the behavior plaintiff engaged in.

In July, 2007, plaintiff was counseled yet again regarding his absenteeism at the end of the work-week, and his deficient performance in which he directed that a classroom being used by a community education class be emptied. The basis for this counseling, like plaintiff's other counselings, was well documented, and resulted in no loss of pay, status, or benefits. Accordingly, I find that this job counseling does not constitute an adverse employment action.

In September, 2007, Potenza received a five-day unpaid suspension from Domm for failing to follow the directive of School Superintendent Jeffrey Crane that the High School lawn be watered in the morning. At the same time, Domm warned the plaintiff that based on his poor performance, chronic absenteeism, and inappropriate conduct, his employment was subject to termination should there be any further performance issues. This action certainly constitutes an adverse employment action, as plaintiff

suffered a loss in compensation. There is no evidence in the record, however, that the employment action was in anyway related to plaintiff's engaging in a protected activity.

There is no temporal connection between the suspension, which occurred in September, 2007, and plaintiff's then most recent protected activity: giving deposition testimony in April, 2007. Moreover, the basis for the disciplinary action was well documented: plaintiff had failed to follow an order given by the head of the School District. While plaintiff claims that he accidentally deleted the e-mail directing him to do so, there is no dispute that he failed to follow the order, and indeed, the suspension was upheld by an independent arbitrator during the grievance of the issue. Because the employment action did not occur in temporal proximity to the protected activity, and because the basis for the suspension was well documented and justified, I find that the plaintiff did not suffer an adverse employment action as a result of his engaging in a protected activity.

On November 7, 2007, plaintiff's employment was terminated by Domm after Domm investigated an incident in which plaintiff allegedly spread a rumor that a male co-worker was gay, and was HIV positive. Plaintiff contends that he was not spreading any rumors, but in fact was only asking about claims that he had heard. Following his investigation, Domm determined that plaintiff had engaged in misconduct, and terminated plaintiff's employment.

Potenza was subsequently reinstated to his position after an arbitrator held that the alleged conduct did not warrant the firing of Potenza.

While the termination of plaintiff's employment certainly constitutes an adverse employment action, there is no evidence in the record to suggest that it was in any way related to plaintiff's engaging in protected activity. There is no temporal connection to plaintiff's then most recent activity (testifying in April, 2007) and the November employment action. Additionally, the employment action was taken as a result of Domm's investigation into plaintiff's questioning regarding another employee's sexual preferences. Even if Domm's conclusion that plaintiff's actions constituted a terminable offense was erroneous, his good faith belief that plaintiff's conduct warranted dismissal absent a discriminatory animus, is entitled to deference from the court. Byrnie v. Board of Education, 243 F.3d 93, 103 (2nd Cir. 2001)(court's role in discrimination case is to prevent unlawful employment practices, "not to act as a superpersonnel department that second guesses employers' business judgments."); Mesnick v. General Electric Co., 950 F.2d 816, 825 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992)(Courts do not sit as "super-personnel departments, assessing the merits--or even the rationality--of employers' nondiscriminatory business decisions."). Here, there is no evidence that Domm considered plaintiff's gender, or

participation in any protected activity in finding that plaintiff's employment should be terminated. Accordingly, I find that plaintiff has failed to establish that the firing took place in response to, or was motivated by plaintiff's engaging in protected activity.

III. Defendant has stated a legitimate non-retaliatory reason for taking adverse employment action against the plaintiff.

Even if the plaintiff could state a prima facie case of retaliation, the defendant has stated a legitimate, non-retaliatory reason for taking adverse employment action against Potenza. As stated above, the only adverse employment actions taken against Potenza were the five-day suspension in September of 2007, and the termination of his employment in November, 2007. The defendant has offered legitimate, non-retaliatory reasons for taking these actions. With respect to the suspension, Potenza was suspended for having failed to comply with the directive of the Superintendent of Schools to have the High School lawn watered in the morning. Although plaintiff claims he never received that order, Domm determined that Potenza had been aware of the order, and suspended him for failing to comply with it. Accordingly, the defendant has stated a legitimate, non-retaliatory reason for suspending Potenza.

Similarly, the defendant has stated a legitimate, non-retaliatory reason for terminating plaintiff's employment. Domm determined in November of 2007 that Potenza had been spreading

rumors that a co-employee was gay and had AIDS or the HIV virus.
Domm determined that such conduct was unacceptable, and terminated
plaintiff's employment as a result.  As such, defendant has stated
a legitimate, non-retaliatory reason for firing the plaintiff.


> IV.  Plaintiff has failed to rebut the defendant's reasons for
> taking adverse employment action against him, and has
> failed to establish that retaliation was a pretext for
> <u>the employment actions taken against him</u>.

Plaintiff has failed to provide any evidence that the reasons
proffered by the defendant for suspending him and terminating his
employment were pretextual, and that those actions were in fact
motivated by a retaliatory animus.  For example, although plaintiff
contends that Carlson made inappropriate comments to him, made him
feel uncomfortable on some occasions, and scrutinized his work more
closely than other employees, he has failed to allege that Carlson
was involved in the decisions to either suspend or terminate his
employment.   Rather,  it  was  Domm,  a  male,  who  made  the
determinations,  and  McCue,  another  male,  issued  plaintiff's
performance evaluations.  Indeed, Carlson lacked the authority to
terminate plaintiff's employment.  Plaintiff's further claims that
Domm sought to negotiate a deal in which Potenza would voluntarily
leave  his  employment  is  similarly  inapposite  to  the  issue  of
retaliation.   There  is  no  evidence  that  Domm  was  retaliating
against the plaintiff by offering him a severance package.  Domm
was simply attempting to determine if plaintiff was interested in

a global resolution of the disputes between the parties. Because the defendant had good-faith, legitimate reasons for suspending and terminating plaintiff's employment, and because plaintiff has failed to rebut those reasons and raise a question as to whether or not the reasons for the adverse employment actions were pretextual, I find that Potenza has failed to raise any inference that the defendants reasons were pretextual, or that he was retaliated against for exercising his rights.

V.    State Law Claims

Claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708 (2nd Cir. 1996). <u>See Haywood v. Heritage Christian Home, Inc.</u>, 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed by <u>McDonnell Douglas</u> standard.). Accordingly, for the reasons stated above, defendant's motion to dismiss plaintiff's state law retaliatory discrimination claims under the New York Human Rights Law is granted.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          September 2, 2009